CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
APR 1 5 2005
JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) Criminal Action No. 7:05CR00018 |
| v. | ) **MEMORANDUM OPINION** |
| TRAVIS JARROD TURNAGE, | ) By: Hon. Glen E. Conrad |
| Defendant. | ) United States District Court |

This case is before the court on defendant's motion to suppress evidence seized from his person and the vehicle in which he was an occupant. The defendant contends that the search violated his rights under the Fourth Amendment because law enforcement lacked either reasonable suspicion or probable cause to justify the seizure and search. For the reasons stated below, the court will deny defendant's motion to suppress.

## FACTUAL BACKGROUND

The events leading to the defendant's arrest on charges of possession with intent to distribute powder and crack cocaine, possession of a firearm by a felon, and possession of a firearm in relation to a drug trafficking crime took place on February 10, 2005 in Roanoke, Virginia. On the evening of that day, the defendant was a passenger in a parked vehicle at the Getty Mart on Main Street in the Wasena neighborhood. Roanoke City police officers received a call from a clerk at the store who reported a suspicious person lurking around the business and gave a description of the person. This person was described as a black male wearing a black jacket and a black stocking cap.

Officer J. W. Hicks of the Roanoke City police department soon arrived at the Getty Mart

and observed a black male wearing a black jacket at the corner of the building. The man turned and quickly got into the passenger side of a vehicle parked alongside the Getty Mart. Officer Hicks parked behind and to the side of the vehicle and instructed a rookie officer riding with him to stand behind the vehicle to observe the passenger. Officer Hicks then entered the store to speak with the clerk.

As Officer Hicks entered the Getty Mart, Officer Helton, a Roanoke City police officer in the street crimes unit with two and a half years of experience with street level drug interdictions, arrived at the location. At the suppression hearing, Officer Helton testified that the location in question was known as a high crime area with drug and prostitution activity. Officer Helton observed the defendant sitting in the passenger side of the vehicle beside the store. He noted that the defendant was checking in the rear view mirrors and looking over his shoulder and lifting himself off the seat. Officer Helton then observed the defendant make a motion as if he were stuffing something in the front of his pants. Officer Helton's patrol car was apparently parked in front of the vehicle.

Officer Helton asked the occupants of the vehicle for their identifications, which he placed in his belt, and took a post at the back of the car, waiting for Officer Hicks to exit the store. When Officer Hicks did leave the store, accompanied by the clerk, Officer Helton gave him a signal indicating that he wanted to check the vehicle's occupants. The clerk stated that the defendant, Turnage, was not the suspicious person who had prompted the call to police. Nevertheless, Officer Helton asked Turnage to step out of the car. When the defendant exited the vehicle, the officers both observed him placing his left hand under his seat as he came out of the car. Officer Helton then patted the defendant down while Turnage had his hands on the vehicle.

2

The officers testified that Turnage consented to a search of his person. While conducting this search, Officer Helton felt a hard substance in a baggie in the front of Turnage's pants. Officer Helton placed a handcuff on one of Turnage's wrists, and Turnage pushed the officer in the chest. Turnage was subdued and placed in custody. Upon conducting an additional search of Turnage's person, the officers discovered more drugs and also found a handgun under the seat of the car.

Turnage was charged with possession with intent to distribute crack cocaine and cocaine powder, possession of a firearm in relation to a drug trafficking offense, and possession of a firearm by a convicted felon. The defendant filed this motion to suppress the evidence seized from his person and from the vehicle in which he was riding on the ground that law enforcement officers did not have a reasonable articulable suspicion to justify detaining and searching him. The parties came before this court at a hearing on the motion on April 14, 2005.

## DISCUSSION

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." U.S. Const. amend. IV. An officer may stop an individual for further investigation under Terry v. Ohio, 392 U.S. 1 (1968), however, "where [the] police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot." United States v. Mayo, 361 F.3d 802, 805 (4th Cir. 2004) (quoting Terry, 392 U.S. at 30). A court examines such a stop under the totality of the circumstances. Id. at 805.

Once a Terry stop is authorized by such reasonable suspicion, an officer may conduct a protective frisk of the person of a suspect if he suspects the person may be armed and dangerous. Id. at 807. Such a protective frisk may include the interior of the vehicle in which the suspect

3

was sitting at the time of the stop when "the police reasonably believe that the suspect may be dangerous and that there may be readily-accessible weapons in his vehicle." United States v. Holmes, 376 F.3d 270, 280 (4th Cir. 2004).

The government contends that the stop and pat down in this case was justified by the police officer's knowledge that the neighborhood is a high crime area with drug activity, the officer's observation of nervous behavior on the part of the defendant in that he was looking over his shoulder at the police officers, and the raising up and stuffing behavior that Officer Helton observed when he arrived at the scene. On the other hand, the defendant argues that he did not waive his constitutional rights by simply being present at a legitimate business on that night, regardless of the fact that it was a high crime area. Turnage also notes that it is not unusual to look over one's shoulder when a uniformed police officer is standing behind one's vehicle. Finally, the defendant contends that placing a hand down the front of the pants is a very common gesture, particularly among males, and that such behavior was not enough to raise a suspicion in the minds of reasonable officers.

The court finds, however, that the stop of the defendant was justified by reasonable suspicion when examined under the totality of the circumstances. Officer Helton testified that the Getty Mart was in a high crime area and had been the location of previous robberies in the several months preceding this incident. The officers were both experienced with drug interdictions on the street level. In fact, Officer Helton testified that he had been involved in 500 or more drug interdictions during his two and a half years with the street crimes unit. He also noted that he had previously observed such "stuffing" behavior when suspects attempted to conceal narcotics or weapons and that he very commonly discovered drugs or firearms on their

4

persons after observing such behavior. While the defendant's gestures of looking in his mirror and glancing over his shoulder may have been the result of simple curiosity regarding the officer behind the vehicle, they could also have appeared to be a sign of nervousness in the presence of police to a reasonable officer observing the defendant on the scene. The search of Turnage's person may have been validly based upon his consent, regardless of whether he was briefly detained, although counsel for the defendant argued that he never gave his consent or did not do so voluntarily. But in any case, the events of that evening, including the action of putting his hand in the front of his pants, an action Officer Helton had observed in the past as an attempt to conceal drugs or a firearm, supplied adequate suspicion under Terry to believe that Turnage may have been engaged in criminal activity.

The court does agree that the officers no longer had reasonable suspicion to detain Turnage regarding the suspicious person report once the clerk indicated that he was not the individual who prompted the original call. However, at that point, there was a reasonable suspicion to justify detaining Turnage on the independent basis laid out above. Officer Helton also testified that he immediately identified the hard substance in a baggie that he felt in the front of Turnage's pants during the pat down as consistent with narcotics. Therefore, regardless of whether the defendant consented to a search of his person, the officers were justified in temporarily detaining Turnage, conducting a pat down of his person, and frisking the interior of the car in which he had been sitting for firearms.

## CONCLUSION

Because the officers' actions were justified by either consent or reasonable suspicion, the defendant's motion to suppress the evidence seized from his person and the vehicle will be

5

denied.

The Clerk is directed to send certified copies of this Memorandum Opinion and the accompanying Order to all counsel of record.

ENTER: This 15d day of April, 2005.

／s／ Glen E. Conrad
United States District Judge